# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

Anthony Lawson,

                    Plaintiff,

          v.

Caesars Entertainment, Inc.,

                    Defendant.

Case No. 2:25-cv-01989-DJA

**Order**

Under 28 U.S.C. § 1915 Plaintiff is proceeding in this action *pro se* and has requested authority to proceed *in forma pauperis*. (ECF No. 1). Plaintiff also submitted a complaint. (ECF No. 1-1). Because the Court finds that Plaintiff's application is complete, it grants the application to proceed *in forma pauperis*. However, because the Court finds that Plaintiff's complaint does not properly assert sufficient facts, it dismisses the complaint with leave to amend.

## I.    *In forma pauperis* application.

Plaintiff filed the affidavit required by § 1915(a). (ECF No. 1). Plaintiff has shown an inability to prepay fees and costs or give security for them. Accordingly, the request to proceed *in forma pauperis* will be granted under 28 U.S.C. § 1915(a). The Court will now review Plaintiff's complaint.

## II.    Legal standard for screening.

Upon granting an application to proceed *in forma pauperis*, courts additionally screen the complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the

complaint that the deficiencies could not be cured by amendment.  *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000).  A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions.  *Iqbal*, 556 U.S. at 679.  Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice.  *Id.* at 678.  Where the claims in the complaint have not crossed the line from conceivable to plausible, the complaint should be dismissed.  *Twombly*, 550 U.S. at 570.  Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers.  *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute.  *See Rasul v. Bush*, 542 U.S. 466, 489 (2004).  Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Cases "arise under" federal law either when federal law creates the cause of action or where the vindication of a right under state law necessarily turns on the construction of federal law.  *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002).  Whether federal-question jurisdiction exists is based on the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Under 28 U.S.C. § 1332(a), federal

district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of different states."  Generally speaking, diversity jurisdiction exists only where there is "complete diversity" among the parties; each of the plaintiffs must be a citizen of a different state than each of the defendants.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

**III.     Screening the complaint.**

Plaintiff sues Caesars Entertainment Inc. for damages.[1]  In the headings of his two claims, Plaintiff lists Title VII, the Age Discrimination in Employment Act, and hostile work environment.  Plaintiff references various other legal theories of liability throughout his complaint as well.[2]  The Court liberally construes his complaint as alleging claims for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, hostile work environment also in violation of Title VII, age discrimination in violation of the Age Discrimination in Employment Act, and defamation.

The Court liberally construes from Plaintiff's complaint that he was, at the time of the events and possibly still, employed by Caesars.  On August 26, 2024, another employee lied about him, resulting in his suspension.  But instead of being brought back in seventy-two hours after his suspension, Plaintiff did not meet with HR until September 9, 2026, thereby losing three weeks of pay.  During the September 9th meeting, the HR representative asked Plaintiff if he knew the other employee (presumably the one who lied about him) was eighteen and thus a minor.  Plaintiff responded that the employee was an adult.  Plaintiff asserts that throughout the rest of the meeting, the HR representative kept speaking from the perspective of the other employee without considering Plaintiff's perspective.  Plaintiff states his belief that this was

---

[1] Some of Plaintiff's handwritten words are difficult to decipher.  Plaintiff's allegations are also scattered and often repeated throughout his complaint.  The Court does its best to determine what Plaintiff has written and to organize his allegations.

[2] One of those references is to Nevada Revised Statute ("NRS") § 618.375.  However, NRS § 618.375 does not create a private cause of action.  Instead it outlines the duties of employers regarding occupational health and safety.  So, the Court does not construe Plaintiff's complaint as bringing a claim under this provision.

because both the other employee and the HR representative are women. Plaintiff claims that he was treated less favorably due to his age (55) and sex (male).

On September 13, 2024, Plaintiff returned to work. He had a "step-1" meeting on September 17, 2024. On September 19, 2024, he walked into the office and said, "hello mama how is your day, is everything ok." It is unclear to whom he made this statement. However, Plaintiff's manager David Grate "immediately blew up" saying "don't ever say that to her again." Plaintiff asked why, pointing out that many people speaking Spanish in the workplace said it and other terms to one another in the office and that nobody ever told them not to. Grate repeated what he had said and shook a piece of paper at Plaintiff saying, "you['re] doing this step one." Someone named Maxine Shaheed, who Plaintiff lists throughout the complaint as a witness and a shop steward, was on speakerphone and told Plaintiff to "let it go." Plaintiff claims that Grate was retaliating against him by yelling at him for his comments even though many other workers say the same thing and Plaintiff has used the term his whole life. In another part of his complaint, Plaintiff asserts that Grate told Plaintiff not to say words in a threatening manner and loud voice. Plaintiff does not identify when Grate said this, but it appears to have happened on September 19, 2024.

On September 20, 2024, Plaintiff had a meeting with Grate to go over his suspension. But there was no resolution. During the meeting, Plaintiff claims that Grate brought up another unrelated employee/manager and discussed the details of her firing. Plaintiff states that this was not appropriate for Grate to discuss and was a breach of policy. Plaintiff states that Grate harassed him and created a hostile work environment by telling Plaintiff that he shouldn't talk to "that employee," (presumably the person he called "mama"). Plaintiff claims that this was "retaliation from the step one." Plaintiff says that either he or someone else "put in another step one on 9-24-24 for inequitable directives from manager," but the "step one" was ignored. Plaintiff asserts that a shop steward named Angeleue Cook witnessed the meeting.

On September 25, 2024, Plaintiff claims that he found out from another manager that Grate was trying to set Plaintiff up to get fired if he spoke to or greeted someone with a Spanish word. Plaintiff claims that a "manager" (it is not clear whom) took a complaint to HR on

September 11, 2024, but HR did nothing to protect Plaintiff.  It is unclear what complaint Plaintiff is referring to or if it is related to Plaintiff's suspension.  Plaintiff also claims in another part of his complaint that the HR representative said that she knew what Plaintiff was talking about (referring to his claims that he was in a hostile work environment and that he was being set up) but could not speak on it.  On September 26, 2024, Plaintiff asserts that he had a nervous breakdown at work and had to take leave.  Plaintiff claims that this was a result of the retaliation and discrimination he faced.

Apparently later, although the timeline is not clear, Plaintiff claims to have had a meeting with HR to discuss Grate trying to set him up.  The HR representative told Plaintiff that "it could be sexual harassment," and Plaintiff responded that "the words are not sexual if you[']re] greeting someone and it is put in the right context like any words," presumably referring to his use of "mama" to refer to a third person.  Plaintiff then told HR that he is in a hostile work environment.  Plaintiff claims that HR "kept [him] in a hostile work environment and ignored [his] complaint."

Apparently later, although the timeline is not clear, Plaintiff claims to have had a meeting with HR, the union, a manager, and the "other employee" (apparently the employee who lied about him to begin with).  Plaintiff asserts that the other employee lied and gave no proof of anything and that HR ultimately had no proof of what was on his write up.  Plaintiff adds that he proved that the other employee was lying.  The other employee got up in the middle of the meeting and walked out.  Plaintiff claims that "they" (presumably other meeting attendees) began telling him that "she is a minor" several times.  Plaintiff insisted that she was an adult.  Plaintiff claims that "age, sex, color should never enter into a meeting and both people should be on equal ground."  Plaintiff asserts that the meeting attendees defamed and slandered him and made him "look like a child predator and molester…"

Plaintiff then (presumably, again the timeline is not clear) made a report to Caesars Ethics about "everything."  Plaintiff claims that nothing was done and that Caesars left him in a hostile work environment.  Plaintiff then had a "last" meeting with HR about "everything" during which an HR representative lied and said that the "other manager" never reported the set up from Grate and that the "other employee" is a minor.  An HR representative yelled at Plaintiff to "just let it

go and leave everything alone." Plaintiff took this as a threat. Presumably also during this meeting, although the timeline is unclear, Plaintiff claims that the HR representative covered up a statement from the "other employee." Plaintiff claims that a shop steward (whose name is illegible) witnessed the encounter.

Plaintiff claims throughout his complaint that he suffered mental distress, anguish, anxiety, and depression from the discrimination, retaliation, and hostile work environment he claims to have experienced. Plaintiff asserts that an HR representative (it is unclear which) should never have asked him "about age" and treated him less favorable due to his age and sex. Plaintiff claims that the HR representative was biased against him. Plaintiff asserts that he was discriminated against based on race and color because HR told him not to speak Spanish even though "the HR representative allows all Spanish speaking people to do it." Plaintiff also claims that the HR representative failed to remove his manager (presumably, Grate).

### A.    Sex discrimination and hostile work environment in violation of Title VII.

Before filing employment discrimination and hostile work environment[3] claims in federal court pursuant to Title VII, plaintiffs must exhaust their administrative remedies by filing a charge of discrimination. 42 U.S.C. § 2000e-5 (Title VII); *see also Munoz v. Mabus*, 630 F.3d 856, 861 (9th Cir. 2010) ("Title VII and the EEOC's implementing regulations set forth specific administrative procedures that a complainant must first exhaust before gaining access to the federal courts on a discrimination complaint."). Title VII directs that a "charge ... shall be filed"

---

[3] Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris*, 510 U.S. at 21 (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" Title VII is violated. *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 65, 67) (internal citations omitted).

with the Equal Employment Opportunity Commission "by or on behalf of a person claiming to be aggrieved" within 180 days "after the alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e–5(b), (e)(1); *Fort Bend County, Texas v. Davis*, 587 U.S. 541, 544-45 (2019). For complaints concerning a practice occurring in a State or political subdivision that has a fair employment agency of its own empowered "to grant or seek relief,"—in Nevada, the Nevada Equal Rights Commission ("NERC")—Title VII instructs the complainant to file her charge first with the state or local agency. § 2000e–5(c); *see* 29 C.F.R. § 1601.74(a). The complainant then has 300 days following the challenged practice, or 30 days after receiving notice that state or local proceedings have ended, "whichever is earlier," to file a charge with the EEOC. § 2000e–5(e)(1). If the state or local agency has a "worksharing" agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. He may file his charge with one agency, and that agency will then relay the charge to the other. *See* 29 CFR § 1601.13 (2018).

Upon receiving a charge, the EEOC notifies the employer and investigates the allegations. 42 U.S.C. § 2000e–5(b). If the Commission finds "reasonable cause" to believe the charge is true, the Act instructs the Commission to "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Ibid.* When informal methods do not resolve the charge, the EEOC has first option to "bring a civil action" against the employer in court. § 2000e–5(f)(1).

In the event that the EEOC determines there is "n[o] reasonable cause to believe that the charge is true," the Commission is to dismiss the charge and notify the complainant of his or her right to sue in court. 42 U.S.C. § 2000e–5(b), f(1); 29 CFR § 1601.28. Whether or not the EEOC acts on the charge, a complainant is entitled to a "right-to-sue" notice 180 days after the charge is filed. § 2000e–5(f)(1); 29 CFR § 1601.28. And within 90 days following such notice, the complainant may commence a civil action against the allegedly offending employer. § 2000e–5(f)(1).

Here, Plaintiff has neither claimed to have received a right to sue notice nor attached any evidence to show that he has. So, Plaintiff has failed to show that he has exhausted his

administrative remedies. The Court therefore dismisses Plaintiff's Title VII discrimination and hostile work environment claims without prejudice and with leave to amend.

### B.    *Age discrimination in violation of the Age Discrimination in Employment Act.*

Plaintiff's claim brought under the Age Discrimination in Employment Act ("ADEA") fails for the same reason as his Title VII claim. *See* 29 U.S.C. § 626(d)(1) (explaining that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission."). Plaintiff has not shown that he has exhausted his administrative remedies. The Court therefore dismisses Plaintiff's age discrimination claim with leave to amend.

### C.    *Defamation.*

Defamation encompasses both slander (spoken) and libel (written) defamatory statements. *Flowers v. Carville*, 292 F.Supp.2d 1225, 1232 n.1 (D. Nev. 2003). To state a claim for defamation, Plaintiff must allege the following elements: "(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Rosen v. Tarkanian*, 453 P.3d 1220, 1225 (Nev. 2019); *see also* Nev. Rev. Stat. § 200.510(1) (defining libel).

Here, Plaintiff has not alleged sufficient facts to state a claim for defamation. He claims that the defamatory statement was that another employee was a minor, which he claims was false because that employee was eighteen. But he does not explain who made those statements, on which occasions, why those statements were unprivileged, to whom they were made, the speaker's fault, or what damages are related to the statements. So, the Court dismisses this claim without prejudice and with leave to amend.

///

///

**IT IS THEREFORE ORDERED** that Plaintiff's application to proceed *in forma pauperis* (ECF No. 1) is **granted.** Plaintiff shall not be required to pre-pay the filing fee. Plaintiff is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of a security therefor. This order granting leave to proceed *in forma pauperis* shall not extend to the issuance and/or service of subpoenas at government expense.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to file Plaintiff's complaint (ECF No. 1-1) on the docket but shall not issue summons.

**IT IS FURTHER ORDERED** that the complaint (ECF No. 1-1) is **dismissed without prejudice** for failure to state a claim upon which relief can be granted, with leave to amend. Plaintiff will have until **June 3, 2026,** to file an amended complaint if the noted deficiencies can be corrected. If Plaintiff chooses to amend the complaint, Plaintiff is informed that the Court cannot refer to a prior pleading (i.e., the original complaint) to make the amended complaint complete. This is because, generally, an amended complaint supersedes the original complaint. Local Rule 15-1(a) requires that an amended complaint be complete without reference to any prior pleading. Once a plaintiff files an amended complaint, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each Defendant must be sufficiently alleged. **Failure to comply with this order will result in the recommended dismissal of this case.**

DATED: May 4, 2026,

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE